UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EQUANN D. SMITH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BARRETT, DAFFIN, FRAPPIER, TREDER & WEISS, LLP, et al., <br><br> Defendants. | Case No. 18-cv-06098-RS <br><br> **ORDER GRANTING MOTION TO DISMISS** |

## I. INTRODUCTION

Plaintiffs Équaan Smith and Russell Robinson bring suit against Barrett, Daffin, Frappier, Treder & Weiss, LLP ("Barrett LLP") and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively "Defendants") for eight purported claims for relief relating to a foreclosure sale conducted on May 31, 2018. Defendants move to dismiss the First Amended Complaint ("FAC"), contending that Plaintiffs' claims fail to state a claim. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument. For the reasons explained below, Defendants' motion is granted in its entirety with leave to amend as to certain claims for relief, but without leave to amend as to others.

## II. BACKGROUND[1]

This case is the latest in a tortured history relating to a $629,000 mortgage loan Smith received in May 2004 from World Savings Bank, FSB ("World Savings"). The loan was secured by a deed of trust recorded against the real property located at 6646 Saroni Drive, Oakland, CA, 94611. (RJN Ex. F.) Roughly three years later, World Savings changed its name to Wachovia Mortgage, FSB ("Wachovia"), and two years after the name change, Wachovia was acquired by Wells Fargo.[2] In April 2009, Smith and Robinson ceased making payments on the loan. (RJN Ex. J at 3.) After a notice of default was entered, Smith (represented by Robinson) brought her first lawsuit against Wells Fargo in Alameda County Superior Court in September 2010 for numerous state law violations regarding an alleged attempt to modify the loan. (RJN Ex. G.) Smith also filed for bankruptcy in 2010. The parties ultimately settled, and in January 2011 the case was dismissed. (RJN Ex. H.)

Years later, in April 2016, the original trustee in the deed of trust, Golden West Savings Association Service Co., was replaced by Barrett LLP. (RJN Ex. I.) That same year, Plaintiffs requested a loan modification from Wells Fargo. Wells Fargo denied the request, concluding that Plaintiffs would be unable to afford a modified loan payment. Another notice of default was recorded in December 2016. (RJN Ex. J.) At the time, the loan arrearage stood at $455,218.50. (*Id.*) Subsequently, a notice of trustee's sale was recorded in March 2017, scheduling a foreclosure sale for April 27, 2017, and listing $1,038,074.16 as the total secured debt owed to Wells Fargo. (RJN Ex. K.) Before the sale could take place, Smith (represented by Robinson) filed her second lawsuit against Wells Fargo (first against Barrett LLP) in Alameda County Superior Court for numerous state law violations regarding Wells Fargo's denial of Smith's 2016

---

[1] The factual background is based on the averments in the FAC, which must be taken as true for purposes of a motion to dismiss. This section also draws on certain records of which the Court takes judicial notice, as discussed below.

[2] Wachovia Mortgage, FSB was converted to Wells Fargo Bank Southwest, N.A., which then became a division of Wells Fargo Bank, N.A. (*See* Request for Judicial Notice ("RJN") Exs. A-E.)

request for a loan modification. (RJN Ex. L.) Wells Fargo then removed this action to the Northern District of California ("Northern District"). (RJN Ex. M.) Pursuant to a settlement, the parties submitted a joint stipulation of dismissal with prejudice in August 2017. (RJN Ex. N.)

Plaintiffs contend in the FAC that, as part of this settlement, Wells Fargo promised to conduct a good faith loan modification and failed to do so. Another notice of trustee's sale was recorded in January 2018, scheduling a foreclosure sale for February 27, 2018 and listing $1,073,828.64 as the total secured debt owed to Wells Fargo. (RJN Ex. O.) When Wells Fargo informed Plaintiffs that the amount necessary to reinstate the loan (i.e. to bring the mortgage current) was $515,263.03, they requested an accounting with a detailed breakdown of the reinstatement amount. The day before the scheduled sale, Smith (represented by Robinson) filed a third lawsuit against Wells Fargo (second against Barrett LLP), alleging the same causes of action as the second lawsuit, and asserting very similar factual averments, with the exception of pleading that Wells Fargo promised to conduct a good faith loan modification pursuant to an agreement in the latter half of 2017 and failed to do so.[3] (RJN Ex. P.) Wells Fargo again removed the action to the Northern District. (RJN Ex. Q.) The parties reached yet another settlement and stipulated to dismiss the case with prejudice in April 2018. (RJN Ex. S.) The sale date was continued to 12:30 PM on May 31, 2018. On May 29, Plaintiffs allege they attempted to tender the "claimed amount in arrears" to Wells Fargo, but that "good faith effort went nowhere." (FAC ¶ 29.)

At 12:19 PM on the day of the scheduled sale, a grant deed was recorded whereby Smith transferred a 4% interest in her property to Robinson. (RJN Ex. T.) At 11:53 AM, Robinson had filed for bankruptcy in the Northern District. (RJN Ex. U, V.) Robinson contacted Wells Fargo and Barrett LLP to inform them of the bankruptcy filing and produced copies of the filings to the auctioneer. The auctioneer, however, could not confirm that the auction had been canceled and remained "standing by for instructions." (FAC ¶ 32.) Robinson then repeatedly called both

---

[3] As explained below, it appears that this averment, which is duplicated in paragraph 18 of the FAC, is referring to the settlement of Smith's second lawsuit against Wells Fargo.

Defendants seeking assurances, with Wells Fargo purportedly assuring him the auction would not proceed at 11:53 AM and 1:30 PM, and Barrett LLP assuring him at 11:48 AM, 12:31 PM, and 1:29 PM. After 1:32 PM, the auctioneer announced the property would be sold that day. Robinson subsequently announced to the persons present that the sale was prohibited by law by virtue of the automatic stay that takes effect in bankruptcy and that anyone purchasing the property would be in violation of that stay. Wells Fargo then bought the property back from Barrett LLP, which was recorded on June 6, 2018. (RJN Ex. W.) At the time of the sale, the secured debt on the loan had grown to $1,081,942.10. (*Id.*)

Plaintiffs aver an unlawful detainer action was filed against them in July 2018, (see Dkt. 1 Ex. B at 70-71), based on false documents, fake efforts at service, and misleading statements. In August 2018, Smith and Robinson brought the current lawsuit in Alameda County Superior Court. (Dkt. 1 Ex. A.) They assert eight causes of action allegedly arising out of the May 31, 2018 sale: (1) violating the automatic stay of bankruptcy proceedings under 11 U.S.C. § 362(a); (2) intentional infliction of emotional distress; (3) quiet title; (4) "foreclosure"; (5) breach of contract (as to Wells Fargo only); (6) negligence; (7) violations of California's Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200, *et seq.*; and (8) "intentional/negligent misrepresentation."

The next month, they sought an *ex parte* application for a temporary restraining order ("TRO") to prevent Defendants from selling, attempting to sell, buying or attempting to buy, to market, or through other means transferring the property and an order to show cause why a preliminary injunction should not issue. (Dkt. 1 Ex. B at 22-33.) The court granted Plaintiffs' application on September 27, 2018 and set a hearing for the order to show cause for November 6, 2018. (*Id.* at 80-81.) Wells Fargo then removed the case to the Northern District, which Barrett LLP joined, on October 4, 2018. (Dkt. 1, 3.)[4] Wells Fargo represented in its notice that

---

[4] Wells Fargo represents in its notice that both it and Barrett LLP received service of process on September 27, 2018 (the same day the state court issued the TRO). (Dkt. 1 at 3.) Therefore, removal was timely under 28 U.S.C. § 1446(b).

Robinson's bankruptcy case was dismissed in July 2018, but that it intended to bring a motion to reopen the bankruptcy case and seek retroactive relief from the automatic stay under 11 U.S.C. § 362(d)(2). (Dkt. 1 at 4.) In light of this, Wells Fargo requested in its notice that the case be transferred to the bankruptcy court, which apparently was not considered by the prior assigned judges and was not part of a subsequent motion by Defendants. After Defendants filed their first motion to dismiss, Plaintiffs responded by amending their complaint and filing the FAC. In November 2018, the parties filed a notice of settlement in principle, which was later withdrawn after the New Year. Wells Fargo renoticed its motion to dismiss the FAC.

During briefing,[5] and before the case was submitted, the bankruptcy court issued an order on February 14, 2019 denying Wells Fargo's motion for annulment of the automatic stay nunc pro tunc to the petition filing date (May 31, 2018). (RJN Ex. X.) The court then ordered Wells Fargo to unwind the May 31, 2018 sale and concluded that neither Wells Fargo nor Barrett LLP acted in bad faith in the sale of the property or warranted sanctions for violation of the automatic stay. (*Id.*) A notice of rescission of trustee's deed upon sale was recorded on February 21, 2019. (RJN Ex. Y.)

While this motion was pending, Plaintiffs filed an application for a TRO to prevent the sale of the property scheduled for June 6, 2019. (Dkt. 66.) The application was denied because Plaintiffs failed to raise serious questions going to the merits, let alone a showing of likely success

---

[5] Plaintiffs' Opposition was originally due January 23, 2019. Plaintiffs brought their first administrative motion to extend this deadline almost two weeks later. (Dkt. 38.) They were granted an extension to file no later than February 14, 2019. (Dkt. 40.) On that day, Plaintiffs filed their second administrative motion for an extension. (Dkt. 41.) Plaintiffs were again granted an extension to file no later than February 17, 2019, and were informed that no further extensions would be granted. (Dkt. 43.) Plaintiffs ignored this warning and filed their Opposition almost ten days later, on February 25, 2019. (Dkt. 44.) Moreover, Plaintiffs' failure to follow court-set deadlines is reflected elsewhere in the docket, as apparent from Magistrate Judge Westmore's order to show cause demanding Plaintiffs file an opposition or else risk having the case dismissed. (Dkt. 20.) Failure to comply with the briefing schedule or this Court's orders regarding extensions is never condoned and Plaintiffs are admonished to familiarize themselves with the Court's local rules and to file all future briefing in a timely fashion. *See* L.R. 7-3. Failure to do so may necessitate consideration of further orders consistent with Rule 11 of the Federal Rules of Civil Procedure. Given the preference to decide cases on the merits, and because Defendants were granted extensions to file their Reply, Plaintiffs' Opposition will be considered.

1  on the merits. (Dkt. 68.) Robinson then filed a notice of pending bankruptcy the day before the
2  sale, thereby postponing the sale of the property to August 1, 2019.[6] (Dkt. 69.) As this motion
3  was fully briefed and submitted for decision prior to the purported new bankruptcy filing and as
4  the status of that filing is uncertain, this order is being issued without further delay.

### III.  LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

Additionally, Plaintiffs' claims that sound in fraud are subject to a higher standard and the circumstances constituting fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b). The same is true of state law claims that are grounded in fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted). "[T]he circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted).

---

[6] On the same day, Robinson filed a request to terminate representation and that both Plaintiffs proceed *pro se*, in light of the State Bar of California placing him on inactive (involuntary) status effective June 7, 2019. (Dkt. 70.)

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242 (internal quotation marks omitted). When an entire complaint is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint. *Vess*, 317 F.3d at 1107. Dismissals under Rule 9(b) and Rule 12(b)(6) are treated in the same manner. *Id.* When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

## IV. DISCUSSION

### A. Requests for Judicial Notice

Defendants request that several documents be judicially noticed. (*See* Dkt. 29, 53.) Plaintiffs do not object to Exhibits T through W, but oppose Exhibits A through Q and Exhibit S on the grounds that they are hearsay and irrelevant. Additionally, Plaintiffs oppose Exhibit R because it is not a document from a judicial proceeding, is hearsay, and is not an undisputedly authentic document. Finally, Plaintiffs make their own requests for judicial notice: (1) the supplemental declaration of Servicelink Agency Sales and Posting, LLC ("ASAP") filed in the related bankruptcy case (Ex. 1); (2) duplicating Defendants' request for judicial notice of the bankruptcy court's February 14, 2019 order (Ex. 2); and (3) Robinson's supplemental opposition brief to Wells Fargo's motion for annulment (Ex. 3). (*See* Dkt. 45.)

Judicial notice is appropriate for "adjudicative fact[s]" that are "not subject to reasonable dispute." Fed R. Evid. 201. This includes facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* Contrary to Plaintiffs'

contention, hearsay is not a factor to consider in this analysis. Because notice may be taken of public records reflecting official acts of the executive branch, see *So Young Kang v. Wells Fargo Bank, N.A.*, No. 16-cv-04309-DMR, 2018 WL 1586237, at *4 (N.D. Cal. Apr. 2, 2018), and information obtained from government websites, see, for example, *Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670 SBA, 2008 WL 4183981, at *7-8 (N.D. Cal. Sept. 9, 2008), Defendants' request for judicial notice is granted for Exhibits A through E. Defendants' request will be granted with respect to the remaining documents except for Exhibit R because they are copies of public records and therefore easily verifiable. Exhibit R, however, is not easily verifiable and therefore is inappropriate for judicial notice. Nor is it incorporated by reference in the FAC, as Plaintiffs do not appear to rely on this settlement agreement as the basis for any of their claims. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (defining the judicial doctrine of incorporation by reference).

As for Plaintiffs' request, Exhibit 2 is necessarily noticed by the granting of Defendants' request for judicial notice of Exhibit X. Exhibit 1 is not necessary to this decision, therefore the Court declines to take judicial notice. *See In re LeapFrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 992 (N.D. Cal. 2016) (declining to take judicial notice of exhibits not necessary to decide the motion). Finally, judicial notice of Exhibit 3 will also be declined. Although it is a court filing, and therefore easily verifiable, it is not relevant to the cause at hand. Plaintiffs assert the exhibit is offered to illustrate that the bankruptcy court did not have before it the issues of bad faith and sanctions when it ruled upon Wells Fargo's annulment motion. This fails for two reasons: first, the bankruptcy court clearly ruled on such issues in its order, (RJN Ex. X), and second, the fact that Robinson did not discuss bad faith or sanctions in his brief says nothing about whether the issues were before the bankruptcy court.

**B. Automatic Stay Violation (11 U.S.C. § 362(a), (k)) & Threshold Issues**

In Defendants' original motion, they conceded the viability of the first claim turned on factual issues that could not be resolved at the pleadings stage. (Mot. at 1 n.1.) Since that time, however, the bankruptcy court ordered Defendants to unwind the sale-at-issue, (RJN Ex. X), which Defendants proceeded to record in February 2019, (RJN Ex. Y). Furthermore, the court held Defendants did not act in bad faith in the sale of the property and that sanctions were not warranted for the violation of the automatic stay. (RJN Ex. X.) This casts serious doubt on the continued viability of Plaintiffs' first claim for relief. Indeed, Plaintiffs concede the bankruptcy court's order establishes they have "already prevailed as to their first cause of action . . . ." (Dkt. 45.) Although not presented in Defendants' motion, in light of Plaintiffs' concession that their first claim for relief is moot, it is dismissed with prejudice.

As a threshold matter, Plaintiffs assert throughout the FAC that Wells Fargo is not the actual owner of the note secured by Plaintiffs' property. The theory that Wells Fargo lacked standing to conduct a foreclosure must fail. The deed of trust identifies "World Savings Bank, FSB, *its successors* and/or assignees" as the lender. (RJN Ex. F.) Wells Fargo is the successor-in-interest to World Savings. (RJN Exs. A-E.) Moreover, Plaintiffs contradict themselves by acknowledging they attempted to secure a loan modification from Wells Fargo. (FAC ¶¶ 18, 63.)

As to Plaintiffs' allegation that Barrett LLP is not registered with the California Secretary of State and thus is not authorized to conduct business or to maintain action in California, Plaintiffs qualify their allegation with the phrase "on information and belief." This creates the inference that Plaintiffs likely lack knowledge of the underlying facts to support the assertion, and are instead engaging in speculation to an undue degree. *See Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014). Since the FAC provides no factual allegations to support Plaintiffs' conclusion beyond "information and belief," it is insufficient to satisfy the pleading requirements of Rule 8(a)(2). *Iqbal*, 556 U.S. at 678. Moreover, the record shows a legitimate transfer of the beneficiary interest from Golden West Savings Association Service Co. to Barrett LLP. (RJN Ex. I.)

**C. Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress, a plaintiff must show: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotation marks omitted). A defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result." *Id.* (internal quotation marks omitted). Conduct is outrageous when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (internal quotation marks omitted).

Plaintiffs claim fails for numerous reasons. First, in response to the bankruptcy court's order, the sale-at-issue was rescinded in February 2019. (RJN Ex. Y.) Thus, the foreclosure sale has been set aside and title has been returned to Smith. As an initial matter, this would appear to moot the claim for intentional infliction of emotional distress. Moreover, as a matter of law, "[a]n assertion of legal rights in pursuit of one's own economic interests does not qualify as 'outrageous' under this standard." *Yu v. Signet Bank/Va.*, 69 Cal. App. 4th 1377, 1398 (1999). In conducting the sale, Defendants were doing nothing more than asserting their legal rights in pursuit of their economic interests.

Further, a claim for intentional infliction of emotional distress cannot be maintained where the defendant's conduct was privileged. *Girard v. Ball*, 125 Cal. App. 3d 772, 786-87 (1981). Under California law, the performance of foreclosure procedures by a trustee or beneficiary under a deed of trust are privileged communications under the qualified, common-interest privilege of Civil Code section 47(c)(1). *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333 (2008); *Girard*, 125 Cal. App. 3d at 787 ("The assertion of an economic interest in good faith is privileged.").[7]

---

[7] Civil Code section 2924 grants privilege protection not only to trustees, but also to beneficiaries insofar as they may act as trustees. *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 340 (2008).

This privilege can only be lost if an act is motivated by ill will. *Kachlon*, 168 Cal. App. 4th at 336; *see also Permito v. Wells Fargo Bank, N.A.*, No. C-12-00545-YGR, 2012 WL 1380322, at *8 (N.D. Cal. Apr. 20, 2012) (allegations that "Wells Fargo acted recklessly" during the foreclosure were insufficient to pierce the statutory privilege); *Snyder v. Wachovia Mortg.*, No. CV F 10-1168-LJO-SKO, 2010 WL 2736945, at *7 (E.D. Cal. July 12, 2010) (shielding lender under the qualified privilege). Since this qualified privilege creates a presumption that any action is made in good faith, any pleadings seeking to pierce this privilege must contain affirmative allegations of malice. *Smith v. Hatch*, 271 Cal. App. 2d 39, 47 (1969). Here, Defendants did nothing more than enforce their rights under the trust deed. The mortgage was delinquent for several years and Defendants pursued their economic interest by completing the foreclosure. The FAC contains no facts showing that Defendants acted with malice when enforcing their security interest.

Plaintiffs respond by reiterating their conclusory allegation that Defendants' act of proceeding with the sale in spite of receiving notice of Robinson's bankruptcy was an act of ill will. Plaintiffs are precluded from reasserting this argument when they already had it heard in the bankruptcy court. After denying Defendants' motion for annulment, the court went on to clarify that "Movant [Wells Fargo] or Movant's foreclosure trustee did not act in bad faith in the May 31, 2018 sale of the Property" and that Defendants' conduct in violation of the automatic stay "d[id] not arise to the level to warrant sanctions . . . ." (RJN Ex. X.) Finally, the allegations in the FAC are wholly conclusory as to Plaintiffs' alleged suffering or connecting Defendants' conduct to such suffering. For these reasons, Plaintiffs' claim for intentional infliction of emotional distress is dismissed without leave to amend.

**D. Quiet Title**

To state a claim to quiet title, a complaint must include: (1) a legal description of the property and its street address or common designation; (2) the title of the plaintiff and the basis of the title; (3) the adverse claims to the title of the plaintiff; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title of the plaintiff against the adverse claims. Cal. Civ. Proc. Code § 761.020.

California law also requires the complaint to be verified. *Id.* Since the FAC is not verified, Defendants contend the quiet title claim must be dismissed on this threshold reason alone.[8] It is not clear, however, if verification of the FAC is an element of the cause of action, rather than a state procedural rule. At least one California district court has held this requirement does not govern in federal court under *Erie*. *In re SFPP Right-of-Way Claims*, No. SACV 15-00718 JVS (DFMx), 2016 WL 6138423, at *5-6 (C.D. Cal. Jan. 21, 2016). Since this issue was not briefed by the parties and there are other deficiencies regarding this cause of action that warrant dismissal, Defendants' request to dismiss the claim on this basis need not be reached.

Under California law, a plaintiff seeking to quiet title in the face of a foreclosure must allege tender or an offer of tender of the amount borrowed. *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 86 (2013). An offer of performance is of no effect if the person making it is not able to perform. Cal. Civ. Code § 1495; *Karlsen v. Am. Sav. & Loan Ass'n*, 15 Cal. App. 3d 112, 118 (1971). Such a tender must be in good faith and unconditional. *Intengan v. BAC Home Loans Servicing LP*, 214 Cal. App. 4th 1047, 1053 (2013).

Plaintiffs' FAC is ambiguous as to whether they are alleging tender of redemption of the property or of reinstatement of the loan. The difference is crucial for alleging a quiet title claim. A tender of the entire amount owing to the beneficiary is a redemption: it does not reinstate the loan, but rather pays the debt in full and requires a release of the deed of trust or mortgage. *Turner v. Seterus, Inc.*, 27 Cal. App. 5th 516, 528 (2018). In contrast, a reinstatement is a tender of the amount required for a cure of the default (back payments and costs) that reinstates the loan according to the original terms as if no default had occurred. *Id.*

Plaintiffs allege that on May 29, 2018, "Smith attempted to tender the claimed amount in arrears to Wells." (FAC ¶ 29.) On its face, it is unclear if Plaintiffs meant for "claimed amount in arrears" to mean the total accumulated debt or the amount necessary to reinstate the loan.

---

[8] Months later, prior to filing their TRO application, Robinson, but not Smith, filed an affidavit verifying the FAC. (Dkt. 65.) Robinson has not presented authority to suggest that his verification may serve in place of Smith's verification.

Considering the full context of the FAC, however, it is reasonable to infer the Plaintiffs were referring to reinstatement and not redemption. In their "foreclosure," breach of contract, and negligence causes of action, Plaintiffs accuse Wells Fargo of refusing a good faith tender of a sufficient reinstatement payment. (FAC ¶¶ 63, 67, 74.) Additionally, there is nothing in the FAC to suggest that Plaintiffs were attempting to tender the entire debt owed in order to redeem the property. Thus, the FAC alleges a tender to reinstate the loan, not a redemption. A *redemption* is necessary to quiet title against the mortgagee, because the cloud on title remains until the full debt is paid. *Lueras*, 221 Cal. App. 4th at 86. Mere reinstatement of the loan would be grounds to cure the default and extinguish the subsequent foreclosure, but it cannot permit borrowers to recoup the property without tender of the entire debt, as that would give them an inequitable windfall by allowing them to evade their lawful debt. *Turner*, 27 Cal. App. 5th at 528.

Even if Plaintiffs had alleged a tender of redemption, the FAC contains no facts to suggest Smith was able to perform the tender. The FAC only provides the bald statement that Smith "attempted to tender the claimed amount in arrears to Wells" on May 29, 2018, and that "good faith effort went nowhere." (FAC ¶ 29.) The FAC, however, has no facts to suggest (i) how the tender was communicated, (ii) what assets, cash or otherwise, Smith had to satisfy the tender, or (iii) when and how Wells Fargo communicated its rejection of the tender. Without such facts, it cannot be reasonably inferred that a valid tender was made and rejected. *See Iqbal*, 556 U.S. at 678; *see also In re Spiegel*, 678 F. App'x 528 (9th Cir. 2017) (affirming bankruptcy court's finding that debtor had failed to produce evidence demonstrating his ability to tender payment). Therefore, Plaintiffs' claim to quiet title is dismissed with leave to amend.

**E. "Foreclosure"**

Construing the FAC in the most favorable light to Plaintiffs, it appears their claim for "foreclosure" is a claim for wrongful foreclosure. To state a claim for wrongful foreclosure, Plaintiffs must allege "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or

harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011). Although difficult to parse from the FAC, Plaintiffs appear to allege three justifications for setting aside the foreclosure sale to satisfy the first element: (i) Wells Fargo ceased engaging in good faith loan modification discussions; (ii) Wells Fargo refused a good faith and sufficient reinstatement payment; and (iii) both Defendants proceeded with the sale despite being made aware of the automatic stay. None are sufficiently plead.

First, as discussed above, the bankruptcy court has already ordered Defendants to unwind the May 31, 2018 sale, and Defendants subsequently recorded the rescission in February 2019. (RJN Ex. X, Y.) Since the foreclosure has already been set aside, this claim is moot and is dismissed without leave to amend.

Even if the claim were not moot, however, the FAC still fails to state a basis for relief. As discussed above, there are significant differences between a tender of redemption and of reinstatement. An additional critical difference between the two for purposes of Plaintiffs' wrongful foreclosure claim is the time frame such tenders can be made prior to the foreclosure. On one hand, the debtor may tender redemption any time prior to the sale of the property at foreclosure. Cal. Civ. Code §§ 2903, 2905; *Turner*, 27 Cal. App. 5th at 527. The period for reinstatement, however, continues until five days prior to the date of the sale, including any postponement. Cal. Civ. Code §§ 2924c(a)(1), (e). The FAC alleges the tender for reinstatement was made on May 29, 2018, only two days prior to the May 31, 2018 sale date. Defendants, therefore, were within their rights to proceed with the sale. *Id.* Plaintiffs' Opposition invokes *Turner v. Seterus, Inc.*, 27 Cal. App. 5th 516 as persuasive authority for a court that permitted a similar fact pattern as this case to proceed. That case, however, is readily distinguishable by the simple fact that those plaintiffs made a legitimate offer to tender reinstatement ten days prior to the scheduled sale. *Turner*, 27 Cal. App. 5th at 521. Furthermore, as discussed with regards to Plaintiffs' claim for quiet title, Plaintiffs failed to allege any facts to suggest a legitimate tender of

reinstatement or redemption, or when or how Wells Fargo refused the tender. Although the reinstatement amount was significantly lower than the total debt, Plaintiffs fail to allege facts suggesting they were capable of tendering even the amount necessary to reinstate the loan.

Additionally, any of Plaintiffs' claims based on Wells Fargo's allegedly culpable conduct regarding Plaintiffs' 2016 request for a loan modification are precluded. In two prior actions that were removed to the Northern District, Plaintiffs alleged improper conduct by Wells Fargo in reviewing the 2016 request. (RJN Ex. L ¶¶ 12, 20, Ex. P ¶¶ 12, 20.) Both actions were dismissed with prejudice pursuant to a settlement. (RJN Ex. N, Ex. S.) Yet the allegations regarding the 2016 loan modification request are copied almost word for word in the FAC. (*Compare* FAC ¶¶ 18, 26, *with* RJN Ex. L ¶¶ 12, 20, *and* Ex. P ¶¶ 12, 20.) When the parties stipulate to a voluntary dismissal with prejudice, it is considered a final judgment on the merits for the purposes of *res judicata*. *See Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1262 (N.D. Cal. 1991). Plaintiffs, therefore, may not assert claims based on such allegations.[9]

**F. Breach of Contract**

Plaintiffs next claim is against Wells Fargo only. To state a claim for breach of contract, "the plaintiff must demonstrate a contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and damage to the plaintiff." *Amelco Elec. v. City of Thousand Oaks*, 27 Cal. 4th 228, 243 (2002). Although difficult to parse from the FAC, the contract at issue appears to be the settlement agreement for Smith's second lawsuit against Defendants. (FAC ¶ 18; *cf.* RJN Ex. L, M, N.) Only Smith was involved with the lawsuit and so would be the only plaintiff to have signed the settlement agreement with Defendants. The same is true of the settlement of Smith's third lawsuit against Defendants. (*Cf.* RJN Ex. P, Q, S.)

---

[9] While Robinson was not a party to these prior lawsuits, he is in privity with Smith, as both individuals reside in the property, have been married since 2004, and share certain assets. Based on this alignment of financial interests, the dismissal of Smith's prior lawsuits constituted an adjudication on the merits barring any future suit by either Smith or Robinson. *Gikas v. Zolin*, 6 Cal. 4th 841, 849 (1993) (holding the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding).

This claim fails for many of the reasons discussed above.  First, Robinson has no standing to bring suit against Wells Fargo for breach of contract, as only Smith was the holder of the mortgage note and a party to the settlement agreement. *Ambers v. Wells Fargo Bank, N.A.*, No. 13-cv-03940-NC, 2014 WL 883752, at *4 (N.D. Cal. Mar. 3, 2014).  Additionally, any claims based on Wells Fargo's handling of Smith's loan modification in 2016 are precluded.  Especially here, where the alleged breach is copied word for word from the complaint in Smith's third lawsuit that was dismissed with prejudice. (*Compare* FAC ¶¶ 18, 26, *with* RJN Ex. P ¶¶ 12, 20.) That lawsuit asserted those allegations in support of a claim for the breach of the implied covenant of good faith and fair dealing and not for breach of contract.  Claim preclusion, however, bars not only claims that were raised, but also those that "might have been offered[.]" *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948).  Switching legal theories or adding allegations does not create a new claim sufficient to avoid *res judicata*. *McClain v. Apodaca*, 793 F.2d 1031, 1033-34 (9th Cir. 1986).  "A party's breach of the implied covenant of good faith and fair dealing gives rise to a contract claim." *Jenkins v. J.P. Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 525 (2013), *disapproved of on other grounds by Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016).  Smith can no longer assert claims that were raised, or could have been raised, in this prior action.

Furthermore, Smith not only fails to allege a timely tender of reinstatement, but she also fails to aver how Wells Fargo's alleged refusal of the tender would breach not only the second lawsuit settlement agreement, but any contract with Wells Fargo.  Finally, Smith's damages allegations are conclusory, listing a laundry list of harms without defining what it is that Smith has suffered in response to Defendants' averred conduct.  Smith must plead specific allegations to allow for the reasonable inference, not the sheer possibility, of harm. *Iqbal*, 556 U.S. at 678-79. Therefore, Smith is given leave to amend this claim except as to allegations regarding the 2016 loan modification request.

**G. Negligence**

To state a claim for negligence, a plaintiff must allege: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's damages or injuries. *Lueras*, 221 Cal. App. 4th at 62. Whether a duty of care exists is a question of law to be decided on a case-by-case basis. *Id.* "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991). Rather, "[l]iability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Id.* (internal quotation marks omitted).

Plaintiffs' claim for negligence fails for the same reasons as does their claim for breach of contract: claims based on allegations regarding the 2016 loan modification request are precluded, Plaintiffs have failed to allege a timely tender of reinstatement, and their damages allegations are conclusory. Moreover, the FAC refers to "statutory duties" on behalf of Defendants without identifying what those duties are or how they were breached in this instance. Therefore, the claim is dismissed with leave to amend except as to allegations regarding the 2016 loan modification request.

**H. UCL**

Plaintiffs bring claims under the unlawful, unfair, and fraudulent prongs of the UCL. Although unclear from the FAC, Plaintiffs clarify in their Opposition that their UCL claims are based on Defendants violation of the automatic stay. As explained above, all claims based on violation of the stay appear to be mooted by the bankruptcy court's order rescinding the sale and the subsequent recording of the rescission. Moreover, the California Supreme Court has held that remedies for the UCL are "generally limited to injunctive relief and restitution." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1990). Since the sale has been rescinded and there is nothing to enjoin, this is further reason to believe that Plaintiffs' UCL

claims are moot. Besides the home itself, the additional harms Plaintiffs allege besides the initial loss of the property, such as decrease in the value of the home, higher property taxes, and expenses are alleged in a wholly conclusory fashion. Therefore, the claim is dismissed without leave to amend.

### I. Intentional/Negligent Misrepresentation

Plaintiffs combine the two causes of action for intentional misrepresentation and negligent misrepresentation into one claim for "intentional/negligent misrepresentation." Under California law, the elements of intentional misrepresentation are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages. *Charnay v. Cobert*, 145 Cal. App. 4th 170, 184 (2006). "The elements of negligent misrepresentation are similar to intentional fraud except for the requirement of scienter; in a claim for negligent misrepresentation, the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." *Id.*; *see also id.* at 185 (stating that negligent misrepresentation is a species of the tort of deceit and, like fraud, requires a misrepresentation, justifiable reliance, and damage (citing *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 n.4 (1995))).

Both claims fail for several reasons. First, as discussed above, any fraud theory appears to be precluded by the bankruptcy court's ruling that neither Defendant acted in bad faith in conducting the sale. (RJN Ex. X.) Plaintiffs therefore fail to plead scienter for intentional misrepresentation. As for negligent misrepresentation, although the FAC alleges Defendants made representations that the auction would not proceed before the sale was conducted, there are no facts to suggest that Defendants lacked any reasonable ground for believing their statements to be true. Plaintiffs also fail to plead justifiable reliance and damage. Plaintiffs aver they were induced to "put their minds at ease" and to make no further attempts to halt the sale because of Defendants' assurances. (FAC ¶ 81.) Yet, Plaintiffs also aver the auctioneer could not confirm that the auction had been cancelled, thereby inspiring Robinson *repeatedly* to contact Defendants

seeking assurances that the sale would not proceed. This does not suggest that either Plaintiff had put their minds at ease prior to the sale. Additionally, the FAC states that Robinson announced at the foreclosure sale to attendees that the sale was prohibited by law by virtue of the automatic stay and that anyone purchasing the property would be violating that stay. Robinson therefore admits that he continued to make attempts to halt the sale after receiving Defendants' assurances that the sale would not proceed. Finally, Plaintiffs fail to allege how they were harmed *because of* Defendants' representations on the day of the sale. In light of these deficiencies, this claim is dismissed with leave to amend only as to negligent misrepresentation.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted with leave to amend only with regard to quiet title, breach of contract, negligence, and negligent misrepresentation. While it appears doubtful that further amendment can cure the defects outlined above, the record does not demonstrate that such an effort would be *entirely* futile. In light of the fact that this is Plaintiffs' first complaint to be dismissed in this action, and Rule 15's liberal application, *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2009) (reversing and remanding to the district court plaintiff's motion to amend where plaintiff already amended his complaint three times, but sought leave of court in good faith to meet with the court's heightened pleading requirements), Plaintiffs may make one more attempt to amend where leave has been given, provided they can do so *in good faith*. An amended complaint must contain specific, clearly defined averments to give fair notice of the claims brought against Defendant. Should Plaintiffs elect to amend their pleading, they must do so within 21 days from the date of this order. If Plaintiff does not file an amended complaint by that date, the case will be dismissed with prejudice. Furthermore, should Plaintiffs once again fail to respond timely to a motion to dismiss, this case will be dismissed with prejudice.

**IT IS SO ORDERED**.

Dated: June 19, 2019

RICHARD SEEBORG
United States District Judge